IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| ANDRE WINGO | § | |
| --- | --- | --- |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-10-CV-0764-BD |
| | § | |
| KAUFMAN COUNTY, TEXAS, | § | |
| ET AL. | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM ORDER

Defendant Christopher Countryman has filed a motion for summary judgment in this *pro se* civil rights action brought under 42 U.S.C. § 1983. In his complaint and interrogatory answers, plaintiff alleges that his vehicle was stopped by defendant, a Texas highway patrol officer, while traveling eastbound on Interstate 20 in Kaufman County, Texas. (*See* Plf. Compl. at 3; Mag. J. Interrog. #1). Defendant asked plaintiff for identification. (*See* Plf. Compl. at 3). When plaintiff took out his wallet to retrieve his driver's license, defendant allegedly seized the wallet and a social security card contained therein. (*Id.*). After examining the social security card and learning that the car had been reported as stolen, defendant arrested plaintiff for forgery of a government document and unauthorized use of a motor vehicle. (*See* Mag. J. Interrog. #1 & 7). Both charges were subsequently dismissed. (*Id.*). Plaintiff then sued defendant and Kaufman County, Texas, for illegal search and seizure and false arrest. The claims against Kaufman County were dismissed on initial screening. *See Wingo v. Kaufman County*, No. 3-10-CV-0764-O-BD, 2010 WL 2300384 (N.D. Tex. May 4, 2010), *rec. adopted*, 2010 WL 2300983 (N.D. Tex. Jun. 3, 2010). Defendant now moves for

summary judgment on his affirmative defense of qualified immunity.[1] The issues have been briefed by the parties, and the motion is ripe for determination.

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The substantive law determines which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *See Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). Once the movant meets its initial burden, the non-movant must show that summary judgment is not proper. *See Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir), *cert. denied*, 113 S.Ct. 82 (1992). The verified complaint and sworn interrogatory answers of a *pro se* litigant can be considered as summary judgment evidence to the extent such pleadings are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4); *see also King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). All evidence must be viewed in the light most favorable to the party opposing the motion. *Rosado v. Deters*, 5 F.3d 119, 122-23 (5th Cir. 1993).

Here, defendant moves for summary judgment on his qualified immunity defense. "Qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

---

[1] Defendant also moves for dismissal of any claims brought against him in his official capacity based on Eleventh Amendment immunity. The Eleventh Amendment would bar any claims for monetary damages brought against defendant in his official capacity. *See Ganther v. Ingle*, 75 F.3d 207, 210 (5th Cir. 1996). However, it appears that plaintiff sues defendant only in his individual capacity.

have known.'" *Winston v. City of Shreveport*, 390 Fed. Appx. 379, 2010 WL 3190709 at *3 (5th Cir. Aug. 12, 2010), *quoting Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The Supreme Court has established a two-step analysis to determine whether a government official is entitled to qualified immunity. First, the court must decide "whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S.Ct. 2508, 2513, 153 L.Ed.2d 666 (2002); *see also Kinney v. Weaver*, 367 F.3d 337, 356 (5th Cir.), *cert. denied*, 125 S.Ct. 102 (2004). Second, the court must ask "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 129 S.Ct. at 816, *citing Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). A court has discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first "in light of the circumstances in the particular case at hand." *Id.* at 818.

Once a defendant invokes his entitlement to qualified immunity, "the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002), *cert. denied*, 123 S.Ct. 1355 (2003). This burden applies both at trial and on summary judgment. *Id.*; *see also Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001). The plaintiff must rebut the defense by establishing that the allegedly wrongful conduct violated clearly established law. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). In order to overcome the defense of qualified immunity at the summary judgment stage, the plaintiff cannot rest on conclusory allegations or assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the defendant's conduct. *Id.*

The gravamen of defendant's qualified immunity defense is that plaintiff consented to the search of his vehicle and the search of his wallet. (*See* Def. Br. at 5-7). "A consensual search is a

well-settled exception to the search warrant requirement." *United States v. Navarro*, 169 F.3d 228, 231 (5th Cir.), *cert. denied*, 120 S.Ct. 117 (1999). In a sworn affidavit attached to his motion, defendant explains that he stopped plaintiff's vehicle for traveling 70 miles per hour in a 65 mile per hour zone. (*See* Def. MSJ App., Exh. B-1). As defendant approached the car, he noticed a ski mask, gloves, and a brightly colored jacket in the back seat. (*Id.*, Exh. B-2). Those items drew interest because defendant had just received information over the radio about an armed robbery that occurred in Arlington, Texas. (*Id.*). Defendant asked plaintiff for his driver's license and proof of insurance. (*Id.*). As plaintiff looked for his driver's license, defendant noticed that he had several other forms of identification in his wallet. (*Id.*). Defendant denies ever grabbing or searching plaintiff's wallet. (*Id.*, Exh. B-2 & 6). Instead, defendant maintains that plaintiff voluntarily produced a Wisconsin driver's license in his name. (*See id.*). Defendant then questioned plaintiff and his passenger, William Hines, and checked their arrest records. (*Id.*, Exh. B-2 & 3). Both had multiple arrests and said they were coming from Arlington. (*Id.*). Defendant also asked plaintiff for consent to search his car. (*Id.*, Exh. B-3). According to defendant, plaintiff consented to a search, which uncovered incriminating evidence that linked him to the Arlington robbery. (*Id.*, Exh. B-3 & 4). However, it was later determined by Arlington police officers summoned to the scene that neither plaintiff nor Hines matched the physical description of the robbery suspects. (*Id.*, Exh. B-4 & 5). While waiting for Arlington police officers to arrive, defendant ran a routine check of the Wisconsin license plates on plaintiff's car, and learned that the car had been reported as stolen. (*Id.*, Exh. B-4). That information was confirmed by Milwaukee police and the dealership where plaintiff allegedly bought the car. (*Id.*, Exh. B-4 & 5). Defendant goes on to explain how he and another DPS officer, Daniel Burnett, came to search plaintiff's wallet:

> Based upon the information received from the dealership and the fact that I had witnessed Mr. Wingo with several different forms of identification, Cpl. Burnett asked Mr. Wingo why he was carrying so many forms of identification. In response, Mr. Wingo retrieved his wallet from his back pocket and voluntarily handed it to Cpl. Burnett. I did not grab his wallet and I did not look through his wallet. Cpl. Burnett looked through Mr. Wingo's wallet and confirmed that he was carrying the identification card of another individual. Cpl. Burnett also noticed that Mr. Wingo's social security card looked fake -- the paper was different and the background color was different. He and I compared Mr. Wingo's card to our own cards and noticed these distinct differences. Suspecting the card to be counterfeit, Cpl. Burnett handed it to me to be retained as evidence.

(*Id.*, Exh. B-5). Defendant arrested plaintiff for unauthorized use of a motor vehicle and forgery of a government document, and transported him to the Kaufman County Jail. (*Id.*, Exh. B-5 & 6). Both charges were eventually dismissed. (*Id.*, Exh. B-6).[2]

Plaintiff disputes the facts giving rise to his initial stop, the search of his wallet and car, the seizure of his social security card, and his arrest. (*See* Plf. Resp. at 1-3). In an attempt to raise a fact issue for trial, plaintiff relies on an unauthenticated document from the Social Security Administration, an unauthenticated copy of a Wisconsin Title and License Plate Application, defendant's answers to interrogatories, and his own unsworn declaration. Only the interrogatory answers, which are verified by defendant under oath, are competent summary judgment evidence.[3]

---

[2] Defendant also relies on two DVDs of the traffic stop to show that plaintiff consented to the search of his vehicle and voluntarily handed his wallet to Corporal Burnett. (*See* Def. MSJ App. A). However, the DVDs are not properly authenticated and cannot be considered as summary judgment evidence. *See Cunningham v. Advanta Corp.*, No. 3-08-CV-1794-K, 2009 WL 290031 at *4 (N.D. Tex. Feb. 3, 2009) (refusing to consider unauthenticated telephone recording as evidence in summary judgment proceeding).

[3] Plaintiff's unsworn declaration is not competent summary judgment evidence because it does not comply with the requirements of 28 U.S.C. § 1746. Under this statute:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same, [ ] such matter may, with like force and effect, be supported, evidenced, established,

However, defendant's interrogatory answers shed no light on the key issue presented by defendant on summary judgment -- whether plaintiff consented to the search of his vehicle and the search of his wallet. Notwithstanding this failure of proof, plaintiff's complaint -- which is verified under penalty of perjury -- *does* raise a genuine issue of material fact regarding consent. Among the facts verified by plaintiff in that pleading are:

- Countryman seized the plaintiff's wallet and proceeded to search the plaintiff's wallet.

- Countryman seized the plaintiff's social security card which was in the plaintiff's wallet.

- The plaintiff did not consent to Countryman searching his wallet.

- The plaintiff did not consent to Countryman seizing the plaintiff's social security card.

(Plf. Compl. at 3). Viewed in the light most favorable to plaintiff, this conflicting evidence raises a fact issue as to whether plaintiff consented to the search of his wallet and the seizure of his social security card. *See Howard v. Vandiver*, 731 F.Supp. 1290, 1295-96 (N.D. Miss. 1990). Because one reason for plaintiff's arrest was that his social security card appeared to be forged, this disputed fact issue also precludes summary judgment on plaintiff's false arrest claim.[4]

---

> or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated[.]

28 U.S.C. § 1746. Although plaintiff states that his declaration is made "under oath pursuant to 28 USC 1746[,]" it is not made under penalty of perjury. (*See* Plf. MSJ Resp. Appx. D).

[4] The court expresses no view as to whether defendant was legally authorized to seize plaintiff's wallet and search its contents without consent. That issue has not been raised by defendant or briefed by either party.

## **CONCLUSION**

For these reasons, defendant's motion for summary judgment [Doc. #21] is denied. The court will set this case for trial after the parties are given an opportunity to conduct full discovery on the merits.

SO ORDERED.

DATED: January 4, 2011.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE